IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 AUG 18 PM 3: 26

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR GUARANTY BANK,<br>  Plaintiff,<br><br>-vs-<br><br>GOLDMAN, SACHS & CO. and DEUTSCHE BANK SECURITIES INC.,<br>  Defendants. | Case No. A-14-CA-129-SS |

## **O R D E R**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Goldman, Sachs & Co. and Deutsche Bank Securities Inc.'s Motion for Judgment on the Pleadings [#51], Plaintiff Federal Deposit Insurance Corporation's Response [#55], and Defendants' Reply [#56]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion.

### **Background**

In 2004 and 2005, Guaranty Bank paid some $2.1 billion for twenty residential mortgage-backed securities certificates, including four certificates from the Defendants in this case. Guaranty Bank subsequently failed, and the FDIC was appointed as receiver on August 21, 2009. The FDIC filed this lawsuit in Texas state court on August 17, 2012, alleging the live Defendants and several others violated the Securities Act of 1933 and the Texas Securities Act by making material misstatements and omissions concerning the mortgages underlying the securities.

The case was initially removed to this Court, but the FDIC prevailed on a motion to remand and the case was returned to the state court. *See FDIC v. Ally Secs. LLC*, No. 1:12-CV-872-SS (W.D. Tex. Dec. 5, 2012). The case proceeded before the state district court, and the parties eventually briefed and argued a summary judgment motion. Before the state court could render a decision on that dispositive motion, the FDIC settled all of its 1933 Act claims, leaving only its TSA claims against the live Defendants. The case was then removed to this Court for the second time.

Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Defendants contend the FDIC's TSA claims are barred by the TSA's five-year statute of repose,[1] relying heavily on the United States Supreme Court's recent decision in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which held state statutes of repose are not preempted by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA). The FDIC counters the TSA's statute of repose is preempted by the FDIC Extender Statute, 12 U.S.C. § 1821(d)(14), a provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). Because the FDIC Extender Statute allows the FDIC up to three years from the date on which it is appointed as receiver for a failed bank to bring claims on behalf of the bank, the FDIC contends its TSA claims are timely.

---

[1] TEX. REV. CIV. STAT. ANN. art. 581-33(h)(2)(b) (providing "[n]o person may sue" under the TSA "more than five years after the sale" of the securities at issue); *see also Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 401 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.) (discussing the TSA's "five-year repose period"); *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1018, 1023–24 & n.3 (C.D. Cal. 2013) (*Guaranty I*) (holding article 581-33(H)(2)(b) is a five-year statute of repose, and collecting Texas cases so holding).

## Analysis

**I.     Legal Standard**

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.   Application

Defendants' no-preemption argument is premised on an application of the Supreme Court's reasoning in *Waldburger* to the FDIC Extender Statute contained in FIRREA. Because *Waldburger* is central to the parties' dispute, the Court begins with a discussion of the case. Then, following the analytical path laid by the Supreme Court, the Court analyzes the FDIC Extender Statute's text, legislative history, and statutory purpose. Ultimately, a faithful application of *Waldburger*'s logic to the FDIC Extender Statute compels the conclusion the TSA's statute of repose is not preempted, and operates to bar the FDIC's untimely claims.

### A.   The *Waldburger* Decision

In *Waldburger*, the Supreme Court was called upon to interpret 42 U.S.C. § 9658, a provision of CERCLA. 134 S. Ct. at 2180. Section 9658 extends the "discovery rule" to toxic tort cases because of the latent nature of many chemical-induced injuries, and "by its terms pre-empts statutes of limitations applicable to state-law tort actions in certain circumstances." *Id.* The question before the Court was whether § 9658 also preempts state statutes of repose.

The Supreme Court granted certiorari to resolve a split of authority among the lower courts on this question. The Fourth Circuit below had held § 9658 is ambiguous, but should be construed to preempt state statutes of repose in order to give effect to CERCLA's remedial purpose. *Id.* at 2181–82. In so holding, the Fourth Circuit agreed with the Ninth Circuit, which had addressed the question several years earlier. *See McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008), *abrogated by Waldburger*, 131 S. Ct. at 2180. On the other side of the divide, the Fifth Circuit and the Supreme Court of South Dakota had both held § 9658 only preempts state statutes of limitations, not state statutes of repose. *See Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005) (*BNSF*); *Clark Cnty. v. Sioux Equip. Corp.*, 753 N.W.2d 406, 417 (S.D. 2008). The Supreme Court sided with the latter courts, holding § 9658 does not preempt state statutes of repose. *Waldburger*, 132 S. Ct. at 2180.

The Supreme Court began its analysis by distinguishing between statutes of limitations and statutes of repose. *Id.* at 2182. Recognizing "both are mechanisms used to limit the temporal extent or duration of liability for tortious acts," the Court distinguished the two by virtue of their timing, purposes, and objectives. *Id.* Statutes of limitations "create[] a time limit for suing in a civil case, based on the date when the claim accrued," generally meaning the date "when the injury occurred or was discovered." *Id.* (internal quotation marks omitted). By contrast, statutes of repose "put[] an outer limit on the right to bring a civil action" based on "the date of the last culpable act or omission of the defendant" rather than the date of accrual. *Id.* The Court characterized a statute of repose as "equivalent to a cutoff," noting it may bar a suit even "before the plaintiff has suffered a resulting injury" or learned of a claim. *See id.* at 2182–83 (internal quotation marks omitted). Statutes of repose provide "a fresh start or freedom from liability." *Id.* at 2183. To highlight this distinction, the

Court noted statutes of limitations are often subject to equitable tolling in extraordinary circumstances, but statutes of repose are not. *Id.*

With those distinctions in mind, the Court turned to its analysis of § 9658. The Court began by analyzing the text of the statute,[2] because "Congressional intent is discerned primarily from the statutory text." *Id.* at 2185. The framework of § 9658 expressly makes preemption "an '[e]xception'

---

[2] Section 9658 reads, in relevant part, as follows:
**(a) State statutes of limitations for hazardous substance cases**
  **(1) Exception to State statutes**
  In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
  **(2) State law generally applicable**
  Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.
. . .
**(b) Definitions**
. . .
  **(2) Applicable limitations period**
  The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.
  **(3) Commencement date**
  The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.
  **(4) Federally required commencement date**
  **(a) In general**
  Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.
  **(b) Special rules**
  In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:
    (i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.
    (ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.
42 U.S.C. § 9658.

to the regular rule." *Id.* (quoting 42 U.S.C. § 9658(a)(1)). The phrase "statute of limitations" is used "four times (not including the caption)," but "statute of repose" never appears. *Id.* The Court found this feature "instructive, but . . . not dispositive" because Congress has a history of using the term "statute of limitations" in a broad manner, including when enacting statutes of repose. *Id.* (citing 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa) and 42 U.S.C. § 2278 as examples of federal statutes of repose labeled statutes of limitations).

Because Congress sometimes calls statutes of repose statutes of limitations, the Court looked for "other evidence of the meaning of the term 'statute of limitations' as it is used in § 9658." *Id.* The Court examined a range of historical legal materials in an attempt to discern what the drafters of CERCLA might have understood when they enacted the statute in 1986. *Id.* at 2185–86. The Court concluded "the distinction between statutes of limitations and statutes of repose was understood by some courts and scholars before 1986." *Id.* at 2185. The distinction was sufficiently established that a 1982 Study Group Report commissioned by Congress in the process of enacting CERCLA referred to both statutes of limitations and statutes of repose, and expressly recommended Congress repeal both kinds of statutes. *Id.* at 2186. Given this historical background, the Court found Congress's failure to expressly refer to statutes of repose indicative of Congress's intent to "not exercise the full scope of its pre-emption power." *Id.*

Returning to its textual analysis, the Court noted § 9658 repeatedly refers to the period of time it covers in the singular. *Id.* at 2186–87. "The statute uses the terms 'the applicable limitations period,' 'such period shall commence,' and 'the statute of limitations established under State law.' This would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." *Id.* Additionally, by defining the applicable limitations period "as 'the period'

during which a 'civil action' under state law 'may be brought,'" § 9658 "presupposes that 'a [covered] civil action' exists." *Id.* at 2187 (quoting 42 U.S.C. § 9658(b)(2)). Because a statute of repose "can prohibit a cause of action from coming into existence," this language presupposing an accrued claim "is best read to encompass only statutes of limitations." *Id.* Finally, § 9658 authorizes equitable tolling for minor and incompetent plaintiffs, which is one of the "critical distinction[s]" between statutes of limitations (which allow tolling) and statutes of repose (which do not). *Id.* (internal quotation marks omitted).

Turning to the purpose of CERCLA, the Court rejected the argument § 9658 impliedly preempts state statutes of repose because such statutes prevent Congress's goals from being accomplished—namely, "help[ing] plaintiffs bring tort actions for harm caused by toxic contaminants." *Id.* at 2188. The Court criticized this framing of CERCLA's purpose as too general, explaining CERCLA is only one part of a complex network of legal remedies. *See id.* "Section 9658 leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." *Id.* Given Congress's decision to leave those vast swaths of state law untouched, the Court found "[t]he case for federal pre-emption . . . particularly weak." *Id.* (internal quotation marks omitted).

Finally, despite finding preemption foreclosed by "the natural reading of § 9658's text," the Court noted the traditional presumption against preemption gave additional support to its conclusion. *Id.* at 2188–89. Even assuming § 9658 could be plausibly read to favor preemption of state statutes of repose, the presumption cautions in favor of "a narrow interpretation" given the States' traditional

role in establishing tort law. *Id.* Accordingly, the Court concluded § 9658 does not preempt state statutes of repose.

**B.     The FDIC Extender Statute**

The FDIC contends its claims are timely because the FDIC Extender Statute contained in FIRREA preempts the TSA's five-year statute of repose. The FDIC Extender Statute provides, in relevant part:

> **(14) Statute of limitations for actions brought by conservator or receiver**
>
> **(A) In general**
>
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—
>
> . . .
>
> >    (ii) in the case of any tort claim . . . the longer of—
> >
> >    **(I)** the 3-year period beginning on the date the claim accrues; or
> >    **(II)** the period applicable under State law.
>
> **(B) Determination of the date on which a claim accrues**
>
> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
>
> >    **(i)** the date of the appointment of the [FDIC] as conservator or receiver; or
> >
> >    **(ii)** the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(A)–(B).

The Court's task is to analyze this provision in light of the Supreme Court's decision in *Waldburger*.

1.  **Statutory Text**

The Court begins with the text of the statute, because "Congressional intent is discerned primarily from the statutory text." *Waldburger*, 134 S. Ct. at 2185; *see also BNSF*, 419 F.3d 362 ("A court considers the language used in a statute as conclusive unless Congress has clearly expressed a contrary intent."). Like § 9658 of CERCLA, the FDIC Extender Statute uses the term "statute of limitations" several times, but never mentions statutes of repose. *E.g.*, 12 U.S.C. § 1821(d)(14)(A), (B). "This is instructive, but not dispositive." *Waldburger*, 134 S. Ct. at 2185. If Congress had intended to preempt state statutes of repose, it certainly could have said so; its failure to do so is therefore an important indication of its intent, unless Congress has elsewhere expressed a specific desire to include statutes of repose within the sweep of the FDIC Extender Statute. *See id.* at 2185–86; *see also BNSF*, 419 F.3d at 364 ("The plain language of § 9658, however, refers to state statutes of limitations—not state statutes of repose. This court is bound by that plain language, absent express congressional intent to the contrary. Congress did not express a contrary intent in this instance." (footnote omitted)).

Also like § 9658, the FDIC Extender Statute is tied to the concept of accrual. Just as § 9658 presupposes a claim exists and therefore can be brought, the FDIC Extender Statute's operation hinges on the date the FDIC's claims[3] accrue. The FDIC Extender Statute states "the applicable statute of limitations . . . shall be" the longer of the "period beginning on the date the claim accrues" or "the period applicable under State law." 12 U.S.C. § 1821(d)(14)(A)(i)–(ii). The next subsection of the statute is dedicated to determining the accrual date of claims. *Id.* § 1821(d)(14)(B) (captioned "Determination of the date on which a claim accrues"). Because statutes of repose "may preclude

---

[3] In this instance, any claims are technically Guaranty Bank's claims, inherited by the FDIC as its receiver.

an alleged tortfeasor's liability before a plaintiff is entitled to sue, before an actionable harm ever occurs," the statutory focus on claim accrual suggests the statute should be "read to encompass only statutes of limitations." *Waldburger*, 134 S. Ct. at 2187.[4]

Continuing this trend, the FDIC Extender Statute is also nearly identical to § 9658 in its repeated references to a singular time period. The FDIC Extender Statute sets forth "the applicable statute of limitations," "the date on which the statute of limitations begins to run," and references both "the period applicable under State law" and "the date on which the cause of action accrues." 12 U.S.C. § 1821(d)(14)(A)–(B). "This would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." *Waldburger*, 134 S. Ct. at 2187.

The FDIC attempts to distinguish the FDIC Extender Statute from § 9658 by arguing the FDIC Extender Statute "replaces" state law limitations periods, whereas § 9658 merely "alters" them. No such distinction can be drawn between the statutes. Section 9658 alters state limitations periods only when the state limitations period commences from an earlier date. 42 U.S.C. § 9658(a)(1) ("[I]f the application limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date *which is earlier than* the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute." (emphasis added)). In other words, § 9658 imposes a federal discovery rule on toxic tort claims even where state limitations

---

[4] The FDIC argues Congress also uses the term "accrues" when enacting statutes of repose, suggesting the accrual language in the FDIC Extender Statute does not evince any intent to exclude statutes of repose. The first half of this argument is undeniably true, both of Congress and state legislatures. The state statute of repose at issue in *Waldburger* even used the term "accrue." *See* N.C. GEN. STAT. ANN. § 1-52(16) ("[N]o cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action."). But the FDIC's conclusion does not follow from its premise. As the Supreme Court explained in *Waldburger*, statutes of repose are "not related to the accrual of any cause of action," and therefore it makes no sense to read a statute setting forth accrual dates as preempting statutes of repose. 134 S. Ct. at 2187 (internal quotation marks omitted).

periods would not include such a rule. *See id.* § 9658(b)(4)(A) (defining the "federally required commencement date" as "the date the plaintiff knew (or reasonably should have known)" the injury was "caused or contributed to by" a toxic substance). In either case, the "applicable limitations period" is drawn from the state statute of limitations. *Id.* § 9658(b)(2). Similarly, the FDIC Extender Statute alters state statutes of limitations only when they are shorter than the alternative federal limitations period; if the state statute is more generous, its terms continue to apply. *See* 12 U.S.C. § 1821(d)(14)(A)(ii) (the "applicable statute of limitations" for tort claims is "the longer of" the three-year federal limitations period or the state law limitations period).

The FDIC also argues the FDIC Extender Statute is materially different from § 9658 because § 9658's preemption clause is structured as an "exception" to the general rule that state statutes of limitations apply. By contrast, says the FDIC, the FDIC Extender Statute applies broadly to "any action brought by [the FDIC]." 12 U.S.C. § 1821(d)(14)(A). This is also a distinction not found in the statutes. Section 9658, though couched as an exception, plainly applies to "any action" within the scope of CERCLA's environmental tort protections. 42 U.S.C. § 9658(a)(1). The "exception" merely limits the use of the "federally required commencement date," which itself is merely an incarnation of the discovery rule. *Id.* Section 9658 thus ensures all claims within CERCLA's coverage receive the benefit of the discovery rule, either by operation of state law or by operation of § 9658's "exception" to state law. Similarly, the FDIC Extender Statute leaves in place state statutes of limitations unless they are shorter than the statute's supplied federal limitations period. *See* 12 U.S.C. § 1821(d)(14)(A)(ii); *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1018, 1027 (C.D. Cal. 2013) (*Guaranty I*) ("[T]he extender provision saves state statutes of limitations from preemption to the extent they exceed the prescribed federal limitations period.").

Both statutes thus modify state law in some, but not all, circumstances, and expressly apply to "any action" within their respective scopes.

The only substantial distinction the FDIC can draw between § 9658 and the FDIC Extender Statute is the lack of equitable tolling in the latter. Defendants are quick to point out other portions of FIRREA do speak in terms of tolling. *See, e.g.*, 12 U.S.C. § 1821(d)(5)(F)(i) (providing "the filing of a claim with the receiver shall constitute a commencement of an action" for purposes of tolling any statutes of limitations); *id.* § 1821(d)(8)(E)(i) (same). But these provisions do not provide for *equitable tolling*, which was the focus of the *Waldburger* Court's analysis on this point. Moreover, the tolling provisions cited above concern the tolling of state statutes of limitations for claimants filing claims with the FDIC as receiver; those claims are not the same claims subject to the FDIC Extender Statute. Although the case for preemption would be stronger if the FDIC Extender Statute authorized equitable tolling like § 9658 does, the absence of an equitable tolling provision alone does not mandate preemption of state statutes of repose.

2.  **Legislative History**

The history of the FDIC Extender Statute and Congress's understanding of statutes of limitations versus statutes of repose is also relevant insofar as it may shed light on what Congress meant when it repeatedly used the phrase "statute of limitations" in the FDIC Extender Statute. *See Waldburger*, 134 S. Ct. at 2186–87 (examining "other evidence of the meaning of the term 'statute of limitations' as used in § 9658"). The history of the FDIC Extender Statute does not provide any evidence Congress meant anything other than what it said in the statute: state statutes of limitations (not repose) are preempted under the circumstances set forth in § 1821(d)(14). Moreover, the understanding Congress had of statutes of limitations and statutes of repose at the time CERCLA

was passed in 1986 can fairly be imported to Congress three years later when it enacted the FDIC Extender Statute.[5] As the Supreme Court explained in *Waldburger*, although use of those two terms "has not always been precise," the distinction between the two was reflected in the 1982 Study Group Report Congress commissioned as part of CERCLA's enactment. 134 S. Ct. at 2187. Additionally, in rejecting the FDIC's motion to reconsider its prior ruling holding the FDIC Extender Statute did not preempt the TSA's statute of repose, the *Guaranty I* court found "statements in the Congressional Record both prior to and contemporaneous with the enactment of FIRREA suggest that Congress understood the meaning of the term 'statute of repose' but nevertheless failed to use it in the extender statute." *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1031, 1037 (C.D. Cal. 2013) (*Guaranty II*).

### 3. Statutory Purpose

Like the unsuccessful respondents in *Waldburger*, the FDIC suggests clear statutory text should be massaged to mean something else in order to advance the generalized goal of the statute. Here, the FDIC contends the FDIC Extender Provision must be interpreted to preempt state statutes of repose in order to ensure the FDIC has adequate time to investigate and bring claims inherited from failed banks.[6] This is the same basic goal-oriented reasoning rejected by *Waldburger*. 134 S.

---

[5] Analyzing the issue without the benefit of *Waldburger*, the *Guaranty I* court found the use of the phrase "statute of limitations" was ambiguous because "Congress and federal courts continued to confuse the terms 'statute of limitations' and 'statute of repose' in 2008." *Guaranty I*, 966 F. Supp. 2d at 1026. Despite this ambiguity, the court found no legislative history sufficient to "overcome the presumption that Congress did not intend to preempt areas of traditional state regulation," and held the TSA's statute of repose was not preempted. *Id.* at 1027.

[6] This is, in essence, a "conflict preemption" argument. The *Guaranty I* court rejected this argument, finding any conflict was insufficient to justify preemption. 996 F. Supp. 2d at 1028–29 (collecting cases holding "a federal interest in preserving the deposit insurance fund is insufficient to preempt state laws"). The Court agrees with *Guaranty I*'s assessment of this argument. *See id.* at 1029–30 ("Preemption in this case would effectively permit the FDIC to succeed to a substantially different right than that held by Guaranty Bank. FIRREA does not manifest Congress'[s] intent to alter the very nature of state claims to better enable the FDIC to enrich the deposit insurance fund." (citations omitted)).

Ct. at 2185 (noting "no legislation pursues its purposes at all costs" (internal quotation marks omitted)). FIRREA, like CERCLA, "does not provide a complete remedial framework." *Id.* at 2188. Instead, FIRREA is part of a broader network of laws, including large amounts of state law, used to advance the goals of the FDIC. Like CERCLA, FIRREA "leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." *Id.* As in *Waldburger*, then, the case for preemption here is "particularly weak." *Id.* (internal quotation marks omitted).

In sum, a faithful application of *Waldburger*'s analytical framework to the FDIC Extender Statute compels the conclusion the FDIC Extender Statute does not preempt state statutes of repose. *See Guaranty I*, 966 F. Supp. 2d at 1024–30 (reaching the same conclusion pre-*Waldburger*); *Guaranty II*, 966 F. Supp. 2d 1036–45 (rejecting numerous arguments raised by the FDIC urging reconsideration of *Guaranty I*).[7]

## C. The FDIC's Pre-*Waldburger* Authorities

The FDIC also relies on a number of pre-*Waldburger* authorities interpreting the FDIC Extender Statute. Unfortunately for the FDIC, none of the cited authorities conduct the same analysis as the Supreme Court did in *Waldburger*, and none requires this Court to hold in the FDIC's favor.

Two Fifth Circuit cases form the vanguard of the FDIC's army of authorities. The first, *FDIC v. Barton*, 96 F.3d 128 (5th Cir. 1996), did not address the issue raised in this case. To the extent

---

[7] The FDIC is understandably upset by the *Guaranty I* court's decision to dismiss its TSA claims. The FDIC now characterizes the *Guaranty I* decision as contrary to that court's own precedent. However, the *Guaranty I* court addressed that argument, explaining its prior decisions "never held explicitly that Section 1821(D)(14) extends *state* statutes of repose." 966 F. Supp. 2d at 1023. Noting that question had "troubled the Court for some time," the Court thoroughly analyzed the issue and held the FDIC Extender Statute does not preempt state statutes of repose. *Id.*

*Barton* is relevant at all, it is relevant only in that it recognizes FIRREA, through the FDIC Extender Statute, "provides a federal statute of limitations for claims brought by [the FDIC] as receiver." 96 F.3d at 132. That proposition is not disputed here, but it also says nothing about whether FIRREA also preempts state statutes of repose. The second Fifth Circuit case is *Stonehedge/FASA-Tex. JDC v. Miller*, 110 F.3d 793, 1997 WL 119899 (5th Cir. 1997) (unpublished). First, *Stonehedge* is not a published opinion and is therefore not binding precedent. Second, *Stonehedge* rejected the notion that statutes of limitations and statutes of repose should be treated differently, explaining the preemption analysis "does not turn on whether the state statute is 'procedural' [meaning a statute of limitations] or 'substantive' [meaning a statute of repose]." 1997 WL 119899, at *2. This reasoning is directly contrary to both *Waldburger* and binding Fifth Circuit precedent. *See Waldburger*, 132 S. Ct. at 2185–87; *BNSF*, 419 F.3d at 363–64 (explaining the important differences between statutes of limitations and statutes of repose, and holding § 9658's plain language only preempts the former). Third, *Stonehedge* ultimately concluded the state law at issue, a provision of the Texas Property Code, was a statute of limitations, not a statute of repose. 1997 WL 119899, at *3. Given these distinctions, *Stonehedge* offers no support for the FDIC's position.[8]

Next up is *Federal Housing Finance Agency v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. 2013), which held a similar extender statute found in the Housing and Economic Recovery Act of 2008 preempted state statutes of repose as well as state statutes of limitations. First, *UBS* is not

---

[8] Somewhat surprisingly, the FDIC makes no effort to address *BNSF*, a published Fifth Circuit opinion holding § 9658 does not preempt a Texas statute of repose using analysis remarkably similar to the Supreme Court's in *Waldburger*. *See BNSF*, 419 F.3d at 363–64. The logic of that case, which properly interpreted CERCLA's extender provision nearly a decade before the Supreme Court addressed the issue in *Waldburger*, applies with equal force to the FDIC Extender Statute, and suggests state statutes of repose are not preempted. *See id.* at 364 ("The plain language of § 9658, however, refers to state statutes of limitations—not state statutes of repose. This court is bound by that plain language, absent express congressional intent to the contrary.").

binding law in this circuit, and the Court may disregard it for that reason alone. Second, *UBS*'s conclusion is irreconcilable with the Supreme Court's interpretation of § 9658 in *Waldburger*, and it is ultimately the Supreme Court's analysis which must control. Because the Court declines to follow *UBS*, the Court is unpersuaded by the several district court opinions the FDIC cites which rely primarily on *UBS* in reaching their conclusions.

To the extent any of these authorities suggest the FDIC Extender Provision is at least ambiguous, *Waldburger* mandates the narrower interpretation—holding state statutes of repose are not preempted—must control. See *Waldburger*, 134 S. Ct. at 2188–89 (applying the presumption against preemption).[9] The Court also rejects the FDIC's argument any ambiguity in the FDIC Extender Statute should be construed in favor of the government. First, the statute is not ambiguous: it plainly applies only to statutes of limitations. Second, the FDIC in its role as receiver "steps into the shoes" of Guaranty Bank, and should therefore be treated as any other private litigant. See *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86–87 (1994) (internal quotation marks omitted) (declining the FDIC's invitation to create federal common law to supplement FIRREA in light of its "high federal interest").

## Conclusion

In sum, the FDIC Extender Statute, like the CERCLA extender statute, preempts only state law statutes of limitations; it says nothing about state statutes of repose. Given this holding, there is no dispute the TSA's five-year statute of repose bars all of the FDIC's claims against the

---

[9] The portion of the Supreme Court's opinion in *Waldburger* which applied the presumption against preemption did not garner majority support. The four justices who joined all but that portion of the opinion did so because, as explained by Justice Scalia in his concurrence, "ordinary principles of statutory construction demonstrate that 42 U.S.C. § 9658 pre-empts only statutes of limitation and not statutes of repose." *Waldburger*, 134 S. Ct. at 2189 (Scalia, J., concurring). The same is true of the FDIC Extender Statute, but, to the extent the presumption does apply, it counsels against preemption.

remaining Defendants in this case. The latest claim brought by the FDIC in this case was extinguished by the statute of repose on December 30, 2010, five years from the date Guaranty Bank purchased the securities. The FDIC has therefore failed to state any claim for which relief can be granted.

Accordingly,

IT IS ORDERED that Defendants Goldman, Sachs & Co. and Deutsche Bank Securities Inc.'s Motion for Judgment on the Pleadings [#51] is GRANTED;

IT IS FINALLY ORDERED that all remaining claims brought by Plaintiff Federal Deposit Insurance Corporation in the above-styled cause are DISMISSED WITH PREJUDICE as time-barred by the Texas Securities Act's statute of repose.

SIGNED this the 18th day of August 2014.

*[signature]*
SAM SPARKS
UNITED STATES DISTRICT JUDGE