IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2017 SEP 14  PM 1:18

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR GUARANTY BANK,<br>Plaintiff,<br><br>-vs-<br><br>GOLDMAN, SACHS & CO. and DEUTSCHE BANK SECURITIES INC.,<br>Defendants. | CAUSE NO.:<br>A-14-CA-129-SS |

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Goldman, Sachs & Co. and Deutsche Bank Securities Inc.'s Motion for Partial Summary Judgment [#90], Plaintiff Federal Deposit Insurance Corporation (FDIC)'s Response [#104] in opposition, and Defendants' Reply [#109] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and order.

### Background

In 2004 and 2005, Guaranty Bank paid some $2.1 billion for twenty residential mortgage-backed securities certificates, including four certificates from Defendants in this case. Guaranty Bank subsequently failed, and the FDIC was appointed as receiver on August 21, 2009. The FDIC filed this lawsuit in Texas state court on August 17, 2012, alleging Defendants and several others violated the Securities Act of 1933 and the Texas Securities Act (TSA) by making material misstatements and omissions concerning the mortgages underlying the securities.



The case was initially removed to this Court, but the FDIC prevailed on a motion to remand, and the case was returned to the state court. *See FDIC v. Ally Secs. LLC*, No. 1:12-CV-872-SS (W.D. Tex. Dec. 5, 2012). The case proceeded before the state district court, and the parties eventually briefed and argued a summary judgment motion. Before the state court could render a decision on that dispositive motion, the FDIC settled all of its 1933 Act claims, leaving only its TSA claims against Defendants. The case was then removed to this Court for the second time.

Defendants now move for partial summary judgment for a determination of the method and rate used to calculate damages under Article 581-33(D)(3) of the TSA. Specifically, Defendants contend damages should be calculated using the declining principal balance method to account for payments made on the outstanding balance in the interest calculation, and the interest rate should be the Coupon Rate specified in the underlying security certificates. On the other hand, the FDIC asserts damages should be calculated using the actual consideration paid for the security certificates, and the interest rate should be six percent per year under general provisions of interest in Chapter 302 of the Texas Finance Code.

Defendants' motion for partial summary judgment has been fully briefed by the parties and is now ripe for consideration.

A.   **Summary Judgment**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing

sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

### A. Method for Calculating Damages

The parties disagree on how damages should be calculated under Article 581-33(D)(3) of the TSA. Defendants contend a declining principal balance method should be used to account for repaid principal. Under this method, "the consideration the buyer paid for the security" is reduced as the principal is paid back to the buyer, and interest is calculated on the outstanding monthly principal balance instead of the full consideration originally paid by the buyer. The FDIC counters the unambiguous text of the statute requires interest be calculated on the full consideration the buyer paid for the security.

Questions of statutory interpretation are questions of law. *Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997). Texas rules of statutory construction apply in interpreting Texas statutes. *Wright v. Ford Motor Co.*, 508 F.3d 263, 269 (5th Cir. 2007). The "primary objective is to give effect to the Legislature's intent." *Texas Lottery Com'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) (citations omitted). The Court should rely on the "plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.*

The Court agrees, based on context, the declining principal balance method should be used to calculate damages under the TSA. Accounting for principal repaid to the buyer is consistent with federal courts' application of the federal securities act (from which the TSA is

-4-

based), application of similarly worded security laws of other states, and the recession principles expressed by Texas courts.

The TSA allows a buyer "to sue either at law or in equity" a seller who offers or sells a security "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made . . . not misleading." Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2). The buyer may seek rescission or "damages if the buyer no longer owns the security." *Id.* Damages are set by the following provision:

> (3) *In damages, a buyer shall recover (a) the consideration the buyer paid for the security plus interest thereon* at the legal rate from the date of payment by the buyer, less (b) the greater of:
>> (i) the value of the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security; or
>>
>> (ii) the actual consideration received for the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security.

Tex. Rev. Civ. Stat. Ann. art. 581-33(D)(3) (emphasis added). The term "interest thereon" refers back to "the consideration the buyer paid for the security." However, the TSA does not explain how damages should be calculated when a buyer is repaid portions of the consideration he or she paid for the security, as is the situation in this case.

The language of the TSA corresponds with the federal securities act. *Compare* Tex. Rev. Civ. Stat. Ann. art. 581-33(D)(3) (calculating damages starting with "the consideration the buyer paid for the security plus interest thereon") *with* 15 U.S.C. § 77l (calculating damages starting with "the consideration paid for such security with interest thereon"). Texas, like other states, modeled its blue sky security laws on the Uniform Securities Act, which itself is based on the federal securities act. *See, e.g.,* Tex. Rev. Civ. Stat. Ann. art. 581-33 cmt. (1977 Amendment) (stating Article 581-33(D)(1) and (3) are "essentially the same as Uniform Securities Act

§ 410(a)."); *see also* Unif. Sec. Act 1956 § 410 cmt. (stating § 410(a)(2) "is almost identical with § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2).").

"Because of the obvious similarities between the TSA and the federal securities acts, Texas courts look to decisions of the federal courts to aid in the interpretation of the TSA." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 563 (5th Cir. 2002) (quoting *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1091 n. 16 (5th Cir. 1996)); *see also Tex. Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 776 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Indeed, the TSA states "[t]his Act may be construed and implemented to effectuate its general purpose *to maximize coordination with federal and other states' law* and administration." Tex. Rev. Civ. Stat. Ann. art. 581-10-1 (emphasis added). The Texas Supreme Court has noted the statute's "history demonstrates that the [Texas] Legislature intended the TSA to be interpreted in harmony with federal securities law." *Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 840 (Tex. 2005).

Federal courts account for principal repaid to the buyer in calculating damages under the federal securities act. *See, e.g., Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 11CV6201 DLC, 2015 WL 640875, at *2 (S.D.N.Y. Feb. 16, 2015) ("With the return of principal each month, the consideration paid [under 15 U.S.C. § 77l] declined in a corresponding amount."); *Johns Hopkins Univ. v. Hutton*, 297 F. Supp. 1165, 1232 (D. Md. 1968), *aff'd in part, rev'd in part*, 422 F.2d 1124 (4th Cir. 1970) ("The partial repayments of the primary sum were reductions of 'consideration' as that word is used in the [federal securities act]"); *Austin v. Loftsgaarden*, 768 F.2d 949, 959 (8th Cir. 1985), *rev'd on other grounds sub nom., Randall v. Loftsgaarden*, 478 U.S. 647 (1986) (reversing the district court's calculation of prejudgment interest under 15 U.S.C. § 77l based on the total amount of consideration paid because "prejudgment interest is due only on the amount of money [the buyers] were out-of-pocket at any

given time"). The Supreme Court has also recognized the term "consideration" used in the federal securities act allows for an "implicit offset for a return of consideration" when "money or property is returned to the investor." *See Randall*, 478 U.S. at 659–60.

Consistent with the interpretation of the federal securities act, courts have also accounted for principal repaid to the buyer in applying other states' blue sky security laws with language similar to the TSA. *See, e.g., Mass. Mut. Life Ins. Co. v. DLJ Mortg. Capital, Inc.*, CV 11-30047-MGM, 2017 WL 1787822, at *2 (D. Mass. May 2, 2017) (treating each repayment of principal as "a partial return of the 'consideration paid' . . . using the declining principal balance before applying prejudgment interest" in applying Mass. Gen. Laws ch. 110A, § 410(a)(2)); *See Nat'l Credit Union Admin. Bd. v. UBS Sec. LLC*, 13CV6731 (DLC), 2016 WL 1179203, at *3 (S.D.N.Y. Mar. 24, 2016) (calculating prejudgment interest under 815 Ill. Comp. Stat. Ann. 5/13 using the declining principal method).

The one federal court to consider the effect of repaid principal under Article 581-33(D)(3) of the TSA applied the declining principal balance. In *Nat'l Credit Union Admin. Bd. v. UBS Sec. LLC,* the court used the "declining principal balance" to calculate damages under the TSA because such a method was consistent with calculations under the federal securities act and recissory damages under Texas law. 2016 WL 1179203, at *2-3. As the court explained, each principal payment repaid partially restores the status quo ante because the buyers are "free to utilize those funds as they saw fit, including allocating them to other interest-bearing investments." *Id.*

Texas courts recognize a purpose of the TSA is to return defrauded buyers to the status quo. *See Aegis Ins. Holding Co., L.P. v. Gaiser*, 04-05-00938-CV, 2007 WL 906328, at *4 (Tex. App.—San Antonio Mar. 28, 2007, pet. denied) ("The TSA's rescission remedy is intended to

restore the plaintiff to his original position"); *Tex. Capital Sec.,* 58 S.W.3d at 776 ("Rescission [under the TSA] is intended to restore plaintiffs to their original position"); *Summers v. WellTech, Inc.*, 935 S.W.2d 228, 233 (Tex. App.—Houston [1st Dist.] 1996, no writ) (discussing federal and state securities laws in stating "the main concern of courts should be to restore the *plaintiff* to the status quo."). The declining principal balance method furthers this goal by compensating a defrauded buyer based on out-of-pocket consideration at any given time.

The FDIC's arguments for using the full consideration in calculating damages are unconvincing. First, the FDIC argues applying the declining principal balance method amounts to a "total re-write" of the damages provision. Resp. [#104] at 11-12. Applying the declining principal balance method is an application of the statutory language consistent with judicial precedent, not a re-write of the statute. Second, the FDIC asserts calculating interest on the full consideration paid by the buyer furthers two of the TSA's three core purposes of "encourag[ing] compliance and deter[ing] misconduct." *Id.* at 12-13. While applying the declining principal balance method reduces damages in this case, it still encourages compliance and deters misconduct by requiring sellers return a defrauded buyer to status quo. Third, the FDIC asserts decisions from other jurisdictions "have no bearing here." *Id.* at 14-18. Although the decisions discussed above that apply the declining principal balance method are not binding on this Court, they are nonetheless instructive of how similar statutory language are interpreted and applied.

In sum, the Court concludes the declining principal balance method should be used in calculating damages under Article 581-33(D)(3) of the TSA.

**B.   Interest Rate**

The parties also dispute the interest rate for calculating damages under the TSA. Article 581-33(D)(3) states, in part, "in damages, a buyer shall recover (a) consideration the buyer paid

for the security *plus interest thereon at the legal rate*." Tex. Rev. Civ. Stat. Ann. art. 581-33(D)(3) (emphasis added). Defendants contend the appropriate interest rate is the Coupon Rate specified in the certificates at issue in this case. The "legal rate" for prejudgment interest, Defendants assert, is the same as the postjudgment interest rate set in Chapter 304 of the Texas Finance Code: the lesser of "(1) the rate specified in the contract . . . or (2) 18 percent a year." Tex. Fin. Code Ann. § 304.002. Because the certificates in this case are "contracts that provide[] for interest," Defendants contend the prejudgment interest is the Coupon Rate the parties contractually agreed to. The FDIC counters the "legal rate," is six percent per year as set forth in Chapter 302 of the Texas Finance Code.

The Court agrees with the FDIC that the legal rate of interest is six percent per year. The term "legal rate" is not defined in the TSA, and therefore the Court considers other sources to determine its meaning. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) ("When a statute uses a word that it does not define . . . we look to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts . . . [to determine the term's common, ordinary meaning]"). The term "legal rate" is defined in the Black's Law Dictionary as "[t]he interest rate imposed as a matter of law when none is provided by contract." BLACK'S LAW DICTIONARY (10th ed. 2014). The Texas Constitution recites "in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6%) per annum," a rate described in the interpretive commentary as a "legal rate of interest at 6%." Tex. Const. art. XVI, § 11. Similarly, the Texas Finance Code sets the default "legal interest" a creditor may charge an obligor "at the rate of six percent a year." Tex. Fin. Code Ann. § 302.002. Texas courts interpreting the "legal rate" in other contexts have also applied a six percent interest rate. *See, e.g., Smith v. Nat'l Resort Communities, Inc.*, 585

S.W.2d 655, 660 (Tex. 1979); *Pecos Cty. State Bank v. El Paso Livestock Auction Co., Inc.* 586 S.W.2d 183, 185 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.); *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 754 (Tex. App.—Corpus Christi 2000, pet. dism'd by agr.); *N. Tex. Fin. Group v. Carl G. Miller Corp.*, 662 S.W.2d 388, 389 (Tex. App.—Dallas 1983, no writ). While § 304.002 of the Texas Finance Code sets the postjudgment interest rate for a "money judgment of a court of this state on a contract that provides for interest," the Court is not persuaded that this provision was intended to set the "legal rate" for calculating damages under the TSA.

In sum, the Court concludes the declining principal balance method should be used in calculating damages under Article 581-33(D)(3) of the TSA, and the appropriate interest rate to apply is six percent per year.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants' Motion for Partial Summary Judgment [#90] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 14th day of September 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE