**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE | § | |
| CORPORATION, as receiver for | § | |
| GUARANTY BANK, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL NO. 1-14-CV-129-XR |
| | § | |
| v. | § | |
| | § | |
| DEUTSCHE BANK SECURITIES, INC., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this day came on to be considered Defendant's motion for reconsideration (Docket No. 227).

### Background

Plaintiff alleges that Defendant Deutsche Bank Securities, Inc. (and others) sold securities, known as "certificates," which were backed by collateral pools of residential mortgage loans.   In 2004 and 2005, Guaranty Bank paid some $2.1 billion for twenty residential mortgage backed securities certificates, including at least four certificates from various Defendants in this case. Guaranty Bank subsequently failed, and the FDIC was appointed as receiver on August 21, 2009. The FDIC filed this lawsuit in a Texas state court on August 17, 2012, alleging the Defendant and several others violated the Securities Act of 1933 and the Texas Securities Act (TSA) by making material misstatements and omissions concerning the mortgages underlying the securities.

Since that time the only remaining defendant in this case is Deutsche Bank Securities Inc.  The only remaining claim is an alleged violation of the Texas Securities Act, Tex. Rev.

Civ. Stat. Ann. Art. 581-33(D)(3). On February 7, 2014, Deutsche Bank removed the case to this Court pursuant to 12 U.S.C. § 1819, and the case was assigned to the Honorable Sam Sparks.

On September 14, 2017, Judge Sparks entered an order in this case deciding the applicable interest rate for calculating damages under the TSA. See Docket No. 127. Deutsche Bank now moves for reconsideration of that order, arguing that Judge Sparks erred in reaching his decision. See Docket No. 227. Defendant argues the appropriate interest rate is the Coupon Rate specified in the certificates at issue in this case. The "legal rate" for prejudgment interest, Defendant asserts, is the same as the post-judgment interest rate set in Chapter 304 of the Texas Finance Code: the lesser of "(1) the rate specified in the contract ... or (2) 18 percent a year." TEX. FIN. CODE ANN. § 304.002. Because the certificates in this case are "contracts that provide[ ] for interest," Defendants contend the prejudgment interest is the Coupon Rate the parties contractually agreed to. The FDIC counters the "legal rate," is six percent per year as set forth in Chapter 302 of the Texas Finance Code.

## Analysis

Tex. Rev. Civ. Stat. Ann. art. 581-33(D) states in relevant part:

> (3) In damages, a buyer shall recover (a) the consideration the buyer paid for the security plus interest thereon at the legal rate from the date of payment by the buyer, less (b) the greater of:
> (i) the value of the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security; or
> (ii) the actual consideration received for the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security.

The statute does not further define how interest at the "legal rate" is calculated.

Deutsche Bank argues that in the absence of a definition in article 581-33, the Court should apply Tex. Finance Code section 304.002 and the coupon rates stated in the certificates should govern the calculation of "prejudgment interest." Tex. Finance Code section 304.002 states, in relevant part, as follows:

> A money judgment of a court of this state on a contract that provides for interest or time price differential earns postjudgment interest at a rate equal to the lesser of:
> (1) the rate specified in the contract, which may be a variable rate….

FDIC counters there is no contract here between Guaranty Bank and Deutsche Bank – only written prospectuses were delivered to Guaranty Bank. Further, FDIC argues that no rates were specified in any contract. The coupon rate was a guarantee made by the Trust, not Deutsche Bank. Deutsche Bank never signed an agreement to pay any principal or interest rate. None of the above facts are disputed by Deutsche Bank. The Court agrees with the FDIC that Tex. Finance Code 304.002 is not applicable as there was no contract between Guaranty Bank and Deutsche Bank.[1]

Accordingly, the Court considers the question, if Section 304.002 does not set the applicable rate, what statute does? FDIC claims Section 302.002 applies as the "legal" rate under the TSA. See Docket No. 236. Deutsche Bank responds that Section 302.002 is limited to the creditor-debtor context and that Texas courts have consistently held that the provision applies only to creditors and obligors. See Docket No. 227.

---

[1] But see *Nat'l Credit Union Admin. Bd. v. UBS Sec. LLC*, No. 13CV6731 (DLC), 2016 WL 1179203, at *7 (S.D.N.Y. Mar. 24, 2016)("NCUA's claim for rescissory damages under the TSA relate to a contract. NCUA's TSA claims seek damages equivalent to unwinding the purchase of the Certificates, which were governed by the terms of the Offering Documents, including the Prospectus Supplements, which contain a coupon interest rate. NCUA's claims would not exist but for the existence of a contractual relationship between the Credit Unions and the defendants."). This Court concludes that this case only involves allegations of fraudulent misrepresentations or omissions, and accordingly the phrase "on the contract" may not be so stretched as Defendant argues. The Court in *NCUA v. UBS* did not address (nor was the issue raised) that no contract existed between the parties.

The Court agrees with Deutsche Bank that Section 302.002 is inapplicable. First, as Deutsche Bank notes, that Section is inapplicable on its face because it applies only to creditors. *See, e.g. Clayton v. Asset Plus Cos., LP*, No. 4:13-CV-2862, 2014 WL 6388430, at *3 (S.D. Tex. Nov. 14, 2014) (citing *Bufkin v. Bufkin*, 259 S.W.3d 343, 357 (Tex. App.–Dallas 2008, pet. denied) ("[W]e believe the provision does not apply to contracts where there is no extension of credit.")). Second, even if Section 302.002 were to apply outside the context of the debtor-creditor relationship, as FDIC argues in its Sur-Reply, Docket No. 243, the fact that the Texas Legislature *has* compelled application of Section 302.002 in other contexts[2], reveals that the Legislature has chosen not to do so in the context of the rate of prejudgment interest in a civil action. *See Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000) (declining to add a knowledge requirement into a statute because the legislature did include a knowledge requirement in *other* provisions).

With neither Section 304.002 nor 302.002 applicable, the Court finds that Section 304.003 supplies the appropriate interest rate. Section 304.003 applies to a "money judgment … to which Section 304.002 does not apply, including court costs awarded in the judgment and prejudgment interest…." *See* Tex. Fin. Code. § 304.003. When there is no relevant contract specifying an interest rate, prejudgment interest is calculated according to the statutory rate supplied by Section 304.003. *See, e.g. Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 813 (Tex. App.—Dallas 2008, no pet.); *see also Tenn. Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141, at *4 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied).

Section 304.003 sets the postjudgment interest rate as:

---

[2] *See, e.g.* Tex. Rev. Civ. Stat. Ann. art. 581-35-1(A); 581-35-1(B); 581-35-2 ("…plus interest on that amount computed *at the rate provided by Section 302.002*…") (emphasis added).

(1) the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation;

(2) five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System…is less than five percent; or

(3) 15 percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System…is more than 15%.

TEX. FIN. CODE. § 304.003(c)(1)-(3); *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (5th Cir. 2011) (noting that pre- and postjudgment interest rates are calculated the same under Section 304.003). Pursuant to Section 304.003, the Court will compute the applicable prejudgment interest rate at the prime rate as set by the Federal Reserve on the day of computation.

### Conclusion

Defendant's motion for reconsideration (Docket no. 227) is GRANTED.

It is so ORDERED.

SIGNED this 19th day of September, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE